1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Green Aire for Air Conditioning WLL,<br><br>Plaintiff,<br><br>v.<br><br>Mohamed Farouk Salem, et al.,<br><br>Defendants. | No. CV-20-01622-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Plaintiff/Counterclaimant Green Aire for Air Conditioning WLL's ("Green Aire") Motion to Reset Deadlines in this case, (Doc. 45), and Motion for Leave to File a First Amended Complaint. (Doc. 53.) Defendant Mohamed Farouk Salem ("Mr. Salem") has filed a response to both the Motion to Reset Deadlines, (Doc. 48), and the Motion to Amend. (Doc. 57.) In turn Green Aire has filed replies. (Docs. 50; 61.) Oral argument was requested by the parties, but the Court declines to hold oral argument finding it unnecessary. LRCiv. 7.2(f).

**I. BACKGROUND**

This case comes to the Court by way of transfer from the Eastern District of California. The case concerns the ownership and use of the AIR2O trademark and the use of associated websites and designs. Green Aire filed its Complaint on June 25, 2018 asserting claims for Cybersquatting under the Lanham Act, Misappropriation of Trade Secrets, and Conversion arising from Mr. Salem's alleged misuse of Green Aire's confidential information and AIR2O trademark. (Doc. 1.)

Green Aire alleges the facts of the case to be as follows: Green Aire is a Bahraini air conditioning company dealing primarily with commercial entities. On October 13, 2011 it purchased a variety of assets and intellectual property associated with the "AIR20" business line from Speakman Company ("Speakman"). Notably, Green Aire alleges the Defendant, Mr. Salem, was employed by Speakman at that time and in fact orchestrated the deal by which it obtained the Air20 trademark. (Doc. 45 at 6.) Due to Mr. Salem's former work with Speakman and the Air20 line, Green Aire hired Mr. Salem as its managing director and granted him a 15% minority ownership interest in Green Aire. The remaining 85% of Green Aire was owned by Moath Babtain (Mr. Babtain), whose family had funded the purchase of the AIR20 assets and intellectual property. In his role, Mr. Salem was given the responsibility of managing Green Aire and was given complete access to its intellectual property, assets, business leads, and supply contacts. (*Id.*)

From the time of the purchase of Air20 in October 2011 until 2014, Mr. Salem continued in this role. During the same time period, Mr. Babtain used his contacts to secure multiple millions of dollars in contracts for Green Aire and gave the company soft loans several times to alleviate any cashflow problems. (Doc 45 at 7.) However, in January of 2014, Mr. Salem traveled to the United States and never returned to Bahrain. Green Aire alleges some months after Mr. Salem's departure it learned that, prior to leaving for the United States, Mr. Salem had downloaded Green Aire's confidential and proprietary information and trade secrets and stolen the hard drives from Green Aire's computers containing its business information. The information allegedly taken included the contact information of the principal decision-makers associated with Green Aire's existing and prospective clients; AIR2O product literature and product designs; and Green Aire's sales lists, financial models, sales reports, marketing plans, and other AIR2O materials. (*Id.*) Green Aire states that Mr. Salem's actions substantially effected its global business and locked them out of their own operations, website, and other business-related accounts.

Green Aire alleges that after establishing himself in the United States, Mr. Salem registered a copycat company titled "Air20 Cooling LLC" ("Cooling LLC") in the State of

California and eventually expanded this company's operations to the United Kingdom and the Middle East. (*Id*. at 4.) In 2017, Mr. Salem also applied to register with the United States Patent & Trademark Office, the trademark "AIR20 INTELEGENT COOLING." Subsequently, Green Aire alleges that Mr. Salem moved Cooling LLC to Arizona and began, among other things, to market his business in Saudi Arabia while claiming his operation to be the "true 'Air20' company." (*Id*. at 8.)

Meanwhile, Green Aire claims it spent the next several years discovering the full scope of Mr. Salem's alleged wrongdoing. Green Aire asserts that beyond taking its trade secrets and hard drives, Mr. Salem "locked Green Aire out of its website greenairglobal.com and took for his own use Green Aire's website AIR20.com." (*Id*.) Green Aire also alleges it was during this time they discovered that Mr. Salem had used one of the contracts entrusted to him by Green Aire to attempt to extort its equipment supplier. (*Id*.) Green Aire further alleges that it discovered the Mr. Salem had falsified some of his professional credentials.

Mr. Salem's responses allege facts that tell a very different story. According to Mr. Salem's Counterclaim, he is the rightful owner of the intellectual property associated with AIR20. (Doc. 4-1 at 3.) Mr. Salem alleges he adopted the trademark Air20 Intelligent Cooling as early as 2009, and further registered the www.air20.com domain name on or around March 2010. Mr. Salem points to his registration of the trademark with the United States Patent and Trademark Office in support of these claims. As such, Mr. Salem alleges that Green Aire's use of the AIR20 product line infringes upon his trademark, and he seeks damages and an injunction against Green Aire's use in consequence.

Though the case currently pends before this Court, this matter was originally filed by Green Aire in the Eastern District of California. (Doc. 1.) Green Aire filed its Complaint on June 25, 2018, and Mr. Salem filed his Answer and Counterclaim on September 4, 2018. (Doc. 4.) In his Counterclaim, Mr. Salem asserted he was the lawful owner of the rights to the Air2O trademark. (Doc. 4-1 at 5.) The Eastern District of California issued a scheduling order in the case in which the deadline to amend pleadings was set at May 19, 2019, the

cutoff for non-expert discovery was set as November 29, 2019, and the deadline for expert discovery was set at January 10, 2020. (Doc. 10 at 2-3.) The deadline for all motions was set as January 31, 2020. (*Id*. at 4-5.) However, after the filing of initial pleadings little was done by either party to advance the litigation. The parties produced their Rule 26 initial disclosures, but aside from that, neither party has produced any materials or been required to answer any discovery. Mr. Salem served discovery on the Plaintiff, but it went unanswered.

Plaintiff eventually filed a motion to transfer the case to this Court under 28 U.S.C. § 1404(a). (Doc. 25.) In the same motion Plaintiff sought an order vacating or modifying the current scheduling order in the case. The judge presiding over the case in the Eastern District of California granted the motion to transfer venue, and declined to rule on the issue of resetting the applicable deadlines of the case reserving the decision for the transferee court. (Doc. 33.) After the case was transferred to Arizona, Plaintiff filed a new motion seeking to reset the deadlines in the case and an additional motion seeking to amend its complaint. (Docs. 45, 53.)

**II. RULE OF LAW**

Under Federal Rule of Civil Procedure 16(b)(4), "[A] schedule may be modified only for good cause and with the judge's consent." In considering whether the amend a scheduling order to reset discovery deadlines, district courts must consider:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). "Carelessness is not compatible with a finding of diligence and offers no reason for a grant

of relief." *Id*. If the party seeking modification was not diligent, the inquiry should end. *Id*. When amendment of pleadings is addressed in a scheduling order, an attempt to amend pleadings after a deadline specified in the scheduling order must also pass muster under Rule 16's "good cause" standard. *Wagner v. Cty. of Plumas*, No. 2:18-cv-03105-KJM-DB, 2020 U.S. Dist. LEXIS 28449, at *5 (E.D. Cal. Feb. 18, 2020) (citing *Johnson*, 975 F.2d at 608-09).

### III. ANALYSIS

Plaintiff Green Aire argues there is good cause to reset the deadlines and reopen discovery in this case because there is no other way to allow a hearing of the case on the merits. Plaintiff further argues the balance of the factors weighs in favor of allowing the amendment. (Doc. 45 at 13.) Plaintiff concedes a lack of diligence in the initial litigation of this case, but argues that the actions of Mr. Salem at least partly hindered its ability to respond. Further, Plaintiff points to the illness of its previous attorney's close family member as cause for its delay. (*Id*.) Plaintiff's former attorney informed Mr. Salem's counsel of the hospitalization of a close family member back in December of 2019 and asked the Defendant's counsel to agree to a continuance. (Doc. 45-2 at 33-41.) According to Mr. Salem's counsel, Mr. Salem did not respond. (*Id*.) Plaintiff also argues that modifying the deadlines is merited because its case against the Mr. Salem has expanded as it continued to uncover the actions taken by Mr. Salem that have hamstrung Green Aire's business. (Doc. 45 at 17.) Further, Plaintiff argues that the fact that almost no discovery has been conducted assures that the discovery requested will lead to the relevant evidence required to conduct this case. (*Id*. at 18.)

Defendant's response argues the deadlines in the case ought not be reset, while simultaneously requesting the Court dispose of the case via either a motion to dismiss or motion for summary judgement in Mr. Salem's favor. (Doc. 48 at 3.) The juxtaposition of simultaneously arguing the original deadlines remain in place, while attempting to assert dispositive motions, whose deadlines are long past, is not addressed. (Doc. 10 at 4-5.) Defendant's arguments against resetting the deadlines allege that Plaintiff's previous

counsel lacked diligence in the initial efforts litigating this case and that as such relief is precluded here. (Doc. 48 at 3 (quoting *Capuano v. Kenneth Eisen & Assocs.*, No. CV-11-02395-PHX-JAT, 2012 U.S. Dist. LEXIS 86720, at *2 (D. Ariz. June 22, 2012).) Defendant also argues that Plaintiff's motion is procedurally deficient because it has not attached a copy of the amended complaint it wishes to file to this motion to reset the deadlines. (Doc. 48 at 4.) Defendant does not cite authority for the proposition that attaching a copy of an amended complaint is required when filing a motion to reset deadlines.

Given the facts of this case and the lack of diligence on the part of Plaintiff, the Court finds there is not good cause to reset the deadlines or amend the complaint in this case. Plaintiff argues it was blindsided by Defendant's claim that he owned the Air2O mark. However, the fact of the matter is that Defendant made this claim as early as September 4, 2018 in his initial answer and counterclaim. (Doc. 4.) This means that Plaintiff had notice of the Defendant's claim of ownership more than a month prior to its submission of the original joint scheduling report on October 15, 2018, (Doc. 7), and weeks prior to the issuance of Magistrate Judge Oberto's original scheduling order on October 23, 2018. (Doc. 10.) In their original joint scheduling report, the parties noted, "Discovery will be needed on…Defendant/Counterclaimant's allegations regarding its claims[.]" (Doc. 7 at 4.) Thus, with full knowledge of Defendant's counterclaim asserting ownership and the right to use the mark at issue, Plaintiff agreed to a discovery cutoff date of November 29, 2019. (*Id.* at 6.) Plaintiff knew of Defendant's claims and arguments at the time it agreed to the scope and duration of discovery and even listed Defendant's counterclaim as a subject upon which discovery was needed. (*Id.*) Plaintiff cannot now invoke Defendant's claim as an unexpected development they did not contemplate when setting the original deadlines. This of course also defeats Plaintiff's argument that amendment of his complaint is merited by the "new and remarkable" assertion of ownership made in defendant's original answer. (Doc. 53 at 10.) The argument may have been new and remarkable on September 4, 2018, but its novelty had certainly worn off by May 15, 2019 when the

deadline to amend the pleadings closed. (Doc. 10.)

Plaintiff also argues its predecessor counsel lost track of the deadlines in the case because he pinched a nerve in his neck and had a close family member enter the hospital. (Doc. 45-2 at 3-4.) However, during the final months of the discovery period, Plaintiff asked for and received two separate extensions of time to respond to Defendant's discovery in this case, which demonstrates he was aware of his pending discovery obligations. (Doc. 16 at 2-3.) Even setting aside the non-responsiveness of plaintiff during the closing months of discovery, the Court simply can't make a finding of diligence when Plaintiff waited more than six months past the deadline of discovery to file a motion to reset the deadlines and amend its complaint. As of early December 2019, Plaintiff's counsel acknowledged that the deadlines in the case were past and requested an extension from Defendant's counsel, yet it was not until June 10, 2020 that the Plaintiff filed a request to reset deadlines with the court. *Cf. Morgal v. Maricopa County Bd. of Supervisors*, 284 F.R.D. 452, 459-60 (D. Ariz. 2012) ("[T]o demonstrate diligence under Rule 16's 'good cause' standard, the movant may be required to show…that []he was *diligent in seeking amendment*…once it became apparent that []he could not comply with the order."). Finally, the Court notes that with regards to Plaintiff's request to amend its complaint, the deadline for amendments in the scheduling order was set as May 15, 2019, (Doc. 10 at 2), months before either of these events occurred.

Plaintiff has also claimed that its failure to respond to discovery or request an amendment of the pleadings should be excused because "Salem's wrongful actions crippled Green Aire." (Doc. 45 at 17.) However, the Court is unpersuaded. Mr. Salem left Green Aire in Bahrain and moved to America in January of 2014. While Green Aire claims that Mr. Salem's actions crippled their ability to bring this lawsuit, that fact will only grant so much leeway. Whatever effect Mr. Salem's actions had on the Plaintiff; it is undisputed that by 2018 the Plaintiff was in a position to file this action. Plaintiff also admits that more than a year prior to filing this action it had knowledge of the requisite facts which caused it to send "Defendants a letter demanding they cease use of the Air2O Mark *and any other*

*Confidential Information derived from Green Aire.*" (Doc. 53 at Ex. 2.) As such, it is was the Plaintiff's lack of diligence, and not any act of Mr. Salem, that prevented Green Aire from moving for an extension of the deadlines or amendment of the complaint in this case.

Finally, the Court notes that it cannot grant relief based upon Plaintiff's attempts to distinguish between actions taken by its predecessor counsel and actions taken by its newly retained counsel. When litigating a case, an attorney acts as the agent of the client, and the actions of the attorney are attributable to the client. *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1880)); *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989) (holding clients are "considered to have notice of all facts known to their lawyer-agent"). The mere insertion of new counsel who promises diligence going forward does not relieve the Court from examining the prior diligence of the party under Rule 16. *See, e.g.*, *Zone Sports Ctr., LLC v. Rodriguez*, No. 1:11-cv-00622-SKO, 2016 U.S. Dist. LEXIS 6186, at *14 (E.D. Cal. Jan. 15, 2016) ("An eleventh-hour case evaluation by newly retained counsel…does not demonstrate diligence during the course of the litigation."); *Ass'n of Apt. Owners of Imperial Plaza v. Fireman's Fund Ins. Co.*, No. 11-00758 ACK-KSC, 2013 U.S. Dist. LEXIS 69933, *13 (D. Haw. May 16, 2013) ("The Court is certainly sympathetic to Defendant's counsel's predicament of stepping into the shoes of the previous counsel. However, this reason does not address the legal requirement that a party must show that the Deadline could not have been reasonably met.").

For the above reasons the Court finds that Plaintiff was not diligent in conducting this litigation and good cause does not exist to grant either amendment or extension of the deadlines. Having found good cause does not exist under Rule 16, the Court need not examine whether amendment is merited under Rule 15.

///

///

///

///

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Reset Deadlines, (Doc. 45), and Motion for Leave to File a First Amended Complaint, (Doc. 53), are denied.

Dated this 29th day of June, 2021.

_____
Honorable Susan M. Brnovich
United States District Judge